905 F.2d 1532
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Hampton BUTLER, Defendant-Appellant.
 No. 89-7174.
 United States Court of Appeals, Fourth Circuit.
 Argued March 7, 1990.
Decided May 11, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (CR-84-41-3; CA-88-440-3K)
 Tracey C. Wright, Third-Year Law Student; Harold Jonathan Krent, Post Conviction Assistance Project, University of Virginia School of Law, Charlottesville, Virginia (Argued), for appellant; William W. Hood, Mary Porto, Phil Paseltiner, Post Conviction Assistance Project, University of Virginia School of Law, Charlottesville, Va., on brief.
 David Jarlath Slattery, Assistant United States Attorney, Columbia, S.C. (Argued) for appellee; E. Bart Daniel, United States Attorney, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 David H. Butler appeals the denial of his motion to vacate or set aside his conviction under 28 U.S.C. Sec. 2255. Butler was convicted of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. Sec. 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. After filing an unsuccessful motion for a new trial, Butler appealed and this court affirmed the conviction and the denial of the new trial motion in an unpublished opinion, United States v. Butler, No. 84-5192, decided April 2, 1985. Shortly after his conviction was affirmed, Butler left the jurisdiction of the court and became a fugitive. In January 1986, he was apprehended in Canada living under an alias, and he had in his possession $250,000 in gold Krugerrands.
 
 
 2
 In February 1988, Butler filed his motion to vacate or set aside his conviction alleging (1) that at trial the government failed to produce documentary evidence in its possession which was exculpatory in nature, thereby violating Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) that his trial counsel had a conflict of interest, because his attorney had represented some other drug defendants who had been "fingered" by Butler and his attorney did not vigorously pursue cross examination for fear of damaging his other clients; and (3) that even if the Brady documents would not likely have affected the outcome at trial, they were material to punishment, and he should be resentenced in light of the newly discovered information. After his conviction, appellant obtained documents from FBI files under the Freedom of Information Act. He claims that these documents should have been produced in response to his Brady motion because many were exculpatory.
 
 
 3
 The district court made a very thorough review of the motion and the evidence supporting it and concluded that Butler had failed to show any Brady violation or a conflict of interest involving his attorney, and his Sec. 2255 motion was denied. After a complete review of the briefs, the record, and the oral arguments, we find no reason to disturb the district court's order, and we affirm.
 
 
 4
 * Butler had worked extensively for the FBI in an undercover capacity prior to his arrest on the present charges in Greenville, South Carolina, on March 2, 1983, by agents of the Drug Enforcement Agency and the Greenville Police Department. At the time of his arrest, agents seized 22 pounds of cocaine and arrested several other individuals in addition to Butler. Butler defended the charges against him by claiming that he was acting in an undercover capacity when he was arrested in Greenville, South Carolina. Butler was controlled by FBI agents in Southern Florida, and they testified as to his involvement with the FBI. However, they stated that they did not know he was going to Greenville and that they had never given him permission, nor had they ever received permission in any case to allow a sizable amount of cocaine to be "put on the street." The plan in which Butler was found to be involved would have placed 10 kilograms of cocaine on the street for sale and distribution. Butler contended that he was authorized to travel anywhere in the United States in connection with his activities and that he was in Greenville in an effort to recruit a pilot for several future drug runs about which he had informed the FBI.
 
 
 5
 At trial the government contended that he was an informant who had gone bad and was attempting to make money for himself while, at the same time, protecting himself by providing certain information to the FBI. In his present motion, Butler contends that the government withheld documentary evidence showing that he was deeply involved in two major drug investigations with the FBI, that he obtained this information through the Freedom of Information Act after his conviction, and that this information was Brady material and would have significantly assisted in his defense.
 
 
 6
 Prior to trial, defense counsel made a motion for Brady material. The FBI files were delivered to the trial judge and the files were carefully examined. The judge then required delivery of certain materials to defense counsel but withheld other materials. At best the "new" materials are merely cumulative and show only that Butler had worked closely with the FBI in certain cases. These materials do not aid his claim that he was in Greenville in connection with his duties as an informant. The FBI did not know that he was in Greenville, and the local law enforcement officers had no information that he was acting undercover. The government did not fail to produce, at any stage of the proceedings, any information that would show that the FBI was aware in advance of his presence in Greenville, or that the FBI had given him prior authorization to put 10 kilograms of cocaine on the street. The information Act does not improve his position. From the very beginning, the government acknowledged that Butler was an undercover informant, and, even after his arrest and prior to his indictment, he had continued to act as an informant. None of these new documents weakens the government's claim that he was "off on his own" or strengthens his contention that he was in Greenville acting for the FBI. Although Butler admits that he had no actual authority from the FBI to be in Greenville at the time of his arrest, he claims that he was there under an authority implied from his prior actions as an FBI informant. This claim was fully explored at trial, and the trial judge questioned an FBI agent extensively on this issue. Nothing in the new documents sheds any new light on this claim.
 
 
 7
 Butler contends that the new materials show that the FBI has an "after the fact" pattern of documentation and, as a result, his activities and the information he supplied to the FBI were not documented until well after the fact. He claims that this delayed documentation pattern undermined the government's position at trial that lack of contemporaneous documentation of his pre-arrest activities demonstrated that he was not authorized to be in South Carolina at the time of his arrest. He claims that the FBI file indicates that many operations are not documented until after they are completed. However, the claimed pattern of delay does not assist him. The evidence was unequivocal that Butler could travel, without prior approval of his FBI contacts, anywhere he desired to collect information, but there was no indication anywhere that he could participate in a plan that would put cocaine on the street.
 
 II
 
 8
 Appellant claims that he was denied his constitutional right of assistance of counsel because his attorney had represented at least two individuals whom he had helped implicate in prior FBI investigations. He claims that his attorney had a conflict of interest because of this prior representation, and, as a result, his attorney did not sufficiently rely on government documents produced prior to trial to show the authority vested in Butler by the FBI. In addition, he claims his attorney did not vigorously pursue other lines of examination and cross examination of witnesses, because the attorney wished neither to disclose his conflict of interest nor to reveal the activities of other persons whom he had represented and whose names appeared in the government files.
 
 
 9
 In Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), the court stated: "We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Butler cannot carry this burden. He claims that information he supplied the FBI led to the arrest of one Lloyd Letterman, a Canadian, in the winter of 1982, and that Butler's attorney, Skip Taylor, had represented Letterman. The record establishes that Taylor did appear for Letterman at a hearing at which Letterman waived extradition and was returned to Canada. Butler did not appear or testify against Letterman, and Letterman had no knowledge of Butler's undercover activities. Butler's role in this affair was used to support his defense that he was a valuable informant with authority from the FBI to travel and obtain information. Attorney Taylor was not protecting Letterman to Butler's detriment, because Letterman had been returned to Canada. There is no proof of a conflict of interest as a result of this representation.
 
 
 10
 There is also a claim of conflict because Taylor represented one Louis Chippas in a criminal action approximately one year after Butler's trial, but during the pendency of his appeal. An FBI agent testified that Butler provided information that led to the arrest of Chippas on drug charges in New Jersey, but there is no showing that this fact resulted in any conflict of interest on the part of Attorney Taylor. Butler did not testify against Chippas and Chippas did not appear at the Butler trial.
 
 
 11
 There is a difference between successive representation of clients by the same attorney and simultaneous representation of two codefendants by the same attorney. In the case of simultaneous representation, only a slight showing of prejudice is required, see Miller v. United States, 564 F.2d 103 (1st Cir.1977), cert. denied, 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1978), but in successive representation a defendant must establish that there was an actual conflict of interest adversely affecting his lawyer's performance. Butler has shown no facts that raise even an inference of a conflict of interest on the part of his attorney.
 
 
 12
 We find no merit to the claim that Butler should be resentenced because of the information discovered in the Freedom of Information action. None of the information recently received indicates that Butler was acting in his capacity as an informant when he was arrested in Greenville, South Carolina. The sentencing judge had reviewed all of the FBI material prior to trial, and the sentencing judge was well aware of the fact that Butler had, on a number of occasions, provided the FBI with valuable information.
 
 
 13
 AFFIRMED.